# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CAROLE CHENEY, | )<br>)<br>) |
| Plaintiff, | )<br>) Case No: 13 C 4269 |
| v. | )<br>)<br>) Magistrate Judge Susan E. Cox |
| STANDARD INSURANCE COMPANY, and LONG TERM DISABILITY INSURANCE, | )<br>)<br>)<br>) |
| Defendants. | )<br>) |

## ORDER

Plaintiff Carole Cheney and Defendants Standard Insurance Company and the ERISA Plan have submitted briefs on the appropriate calculation of Predisability Earnings. For the reasons stated we hereby grant Plaintiff's Motion for Entry of Judgment [29] and Deny Defendants' Motion for Entry of Judgment [38].

## STATEMENT

In this ERISA action we previously determined plaintiff, Carole Cheney, was entitled to receive disability benefits under a group long term disability plan offered through her employer, Kirkland & Ellis, LLP, by defendant Standard Insurance Company. We left for further briefing the issue of how those earnings should be calculated under the policy. The parties have submitted briefs on the issue of whether the calculation should be based on plaintiff's 2010 tax year or 2011 tax year.

Both parties agree that the first question we must answer is when plaintiff ceased "Active Work."[1] Under the terms of the policy, the benefit for partners is calculated based plaintiff's

---

[1] Pl's Memo at 6, dkt. 54; Def's Memo at 6, dkt. 55.

average monthly compensation during the *tax year prior* to the last day of "Active Work." This is a contentious issue because the picture of plaintiff's prior tax year is vastly different from 2010 to 2011 because plaintiff took significant time off work in 2010.[2] Plaintiff argues that her last day of active work was January 3, 2012 - when her leave of absence began - and defendant argues it was December 19, 2011, because plaintiff admitted to working for the law firm "until December 19, 2011"[3] and claimed she was "continuously disabled from December 20, 2011 onward."[4]

There are two relevant policy provisions: one defining "Predisability Earnings" and the other titled the "Active Work Provisions." The parties agree that the "Predisability Earnings" provision leads us to the "Active Work Provisions, " defining "Active Work."

> PREDISABILITY EARNINGS
>
> Your Predisability Earnings will be based on your earnings in effect on your last full day of Active Work. However, if you are a Partner, your Predisability Earnings will be based on your prior tax year. Any subsequent change in your earnings after that last day of Active Work will not affect your Predisability Earnings.
>
> > A. Partners
> >
> > If you are a Partner, Predisability Earnings means your average monthly compensation from your Employer during your prior tax year. Your average monthly compensation is determined by adding the following amounts as reported on the applicable Schedule K-I, Schedule C, or Form W-2 federal income tax return, and dividing by 12 (or by the number of months you were a Partner, if less than 12):
> >
> > 1. Your ordinary income from trade or business activity(ies).
> > 2. Your guaranteed payments.
> > 3. Your net profit from business.

---

[2] Plaintiff's tax records from 2010 reflect earnings of $64,660 (STND 00953) whereas she received a total of $190,384.00 for tax year 2011 (STND 00936).
[3] Pl's Compl., ¶6, dkt. 1.
[4] Pl's Compl., ¶¶11, 14, dkt. 1.

> If you were not a Partner during the entire prior tax year, your Predisability Earnings will be your average monthly compensation for your period as a Partner.[5]

In a separate section titled "Active Work Provisions" the policy provides:

> A. Active Work Requirement
>
> You must be capable of Active Work on the day before the scheduled effective date of your insurance or your insurance will not become effective as scheduled. If you are incapable of Active Work because of Physical Disease, Injury, Pregnancy or Mental Disorder on the day before the scheduled effective date of your insurance, your insurance will not become effective until the day after you complete one full day of Active Work as an eligible Member.
>
> Active Work and Actively At Work mean performing with reasonable continuity the Material Duties of your Own Occupation at your Employer's usual place of business.[6]

Here, Active Work is defined as "performing with reasonable continuity the Material Duties of your Own Occupation at your Employer's usual place of business."[7] In the motion for summary judgment ruling we noted that plaintiff indicated on her long term disability benefits form that "12/31/11" was her "[l]ast full day at work"[8] and several other documents indicated her last day of work was December 19, 2011.[9] Despite this evidence, we found that for purposes of coverage, she did not cease to be a "Member" of the policy on any of these dates. Instead, we found that nothing plaintiff did between December 19, 2011 and January 3, 2012 - when her approved leave began - resulted in coverage ending even if she was not in the office or billing hours during that time. Specifically, we held that it would be "a stretch" to find that that "plaintiff, a lawyer with Kirkland for twenty years, immediately ceased being a "Member" two weeks before her

---

[5] STND 00795.
[6] STND 00788.
[7] STND 00788.
[8] STND 00658.
[9] STND 00497, 00665; Def's Resp. to PFF ¶49.

scheduled leave of absence" simply because she alleged to have taken time off for the holidays.[10]

Plaintiff argues that our analysis here should be the same. Plaintiff's employer paid her as an active employee until January 3, 2012 regardless of whether she was billing time after December 19. Plaintiff's argument focuses heavily on the ambiguous nature of the term "Active Work," which must be construed in her favor.[11] Plaintiff asserts that one interpretation is that an employee would continue to be "performing with reasonable continuity the Material Duties" of her occupation even while on vacation. (This is, of course, in line with our ruling that plaintiff's insurance coverage did not end while she was allegedly on holiday). In other words, plaintiff's legal disability did not begin until her leave of absence started, which then ended her period of "Active Work."

Defendants take a much more literal approach. They argue that because it is undisputed that plaintiff did not bill hours after December 19, 2011, this must be her last day of "Active Work." Defendants also claim plaintiff is trying to create an ambiguity where none exists. This relates to plaintiff's argument that the definition of "Active Work" – performing with reasonable continuity the Material Duties of your Own Occupation – does not consider vacation or other days off. Nothing defendants argue, however, refutes plaintiff's point. Defendants instead focus entirely on a notation mentioned by plaintiff in a footnote: that the term "Active Work" is also defined in the "Becoming Insured" section of the policy as including scheduled days off. Defendants argue the two different definitions should not be used to create ambiguity in the provision applicable in this case. But we do not believe plaintiff relies on that argument. In fact, plaintiff agrees that this other definition applies only to establishing coverage, and not to the defined term "Active Work" in the Predisability Earnings section.

---

[10] *Cheney v. Standard Ins. Co.,* No. 13 C 4269, 2014 WL 4259861, *3 (N.D. Ill. Aug. 28, 2014).
[11] *See Santaella v. Met. Life Ins. Co.,* 123 F.3d 456, 461 (7th Cir. 1997)(indicating rule that federal common law requires us to construe ambiguities in favor of the insured).

Defendants also assert that the location of the "Active Work" definition does not create ambiguity simply because it is not in a "Definitions" section of a policy.[12] But plaintiff does not argue to the contrary. Plaintiff focuses instead on the notion that the "Active Work" definition can reasonably be interpreted to apply to her even when she was not billing hours after December 19, because the law firm still considered her to be actively working until her leave commenced.

We are required to interpret terms in the policy "in an ordinary and popular sense, as would a person of average intelligence and experience."[13] And a term may be considered ambiguous if it has alternate interpretations.[14] Certainly one ordinary reading of the policy language is that because plaintiff's law firm paid her as an active employee through January 3, 2012, when her leave started, she was indeed in "Active Work" status through that time.[15] We are also persuaded by the possibility that plaintiff, as she claimed, was disabled prior to her leave of absence but that there is no "logical incompatibility between working full time and being disabled from working full time… ."[16] The Seventh Circuit has made clear that even a totally disabled person may force herself to continue to work, though not indefinitely.[17] This is the argument plaintiff has made throughout this case – that she has slowly become more disabled over time – first requiring her to work from home most days, attempt ergonomic accommodations, and eventually requiring her to quit her job completely.

Interpreting policy language in ERISA cases also requires us to consider "normal contract

---

[12] *See Bauer v. Int'l Brotherhood Electrical Workers Local No. 150 Pension Fund,* No. 13-710, 2014 WL 273887, *5 (N.D. Ill. Jan. 24, 2014)(noting that a "contract need not set forth the meaning of every defined term under the heading "Definitions" to avoid ambiguity.").
[13] *Santaella,* 123 F.3d at 461.
[14] *Bechtold v. Physicians Health Plan of N. Ind., Inc.,* 19 F.3d 322, 325 (7th Cir. 1994).
[15] *See Ruttenberg v. U.S. Life Ins. Co.,* 413 F.3d 652, 668 (7th Cir. 2005)(noting that a disputed contractual term could not "be said to be unambiguous," and that the two interpretations were at least plausible).
[16] *Hawkins v. First Union Corp. Long-Term Disability Plan,* 326 F.3d 914, 918 (7th Cir. 2003).
[17] *Hawkins,* 326 F.3d at 918.

principles" and such includes "considering the reasonable expectations of the insured."[18] We find it to be a reasonable expectation for an employee to believe she would remain "Actively At Work" while still employed, and prior to taking any official leave. There is no dispute that plaintiff was returned to salaried status in January 2011 and tracked her billable hours throughout that year.[19] Put simply, defendants cite to no evidence supporting their position that plaintiff stopped "performing with reasonable continuity the Material Duties of" her job suddenly on December 19, except that there was no billing logged after that date. If, as we held in our ruling on the motion for summary judgment, plaintiff was merely taking a few days off for the holiday during this time, a reasonable interpretation of the policy language would be that she remained an active employee during that time. The official change in her work status was not until January, and she continued to receive her regular pay through the end of December 2011.

As a final point, plaintiff's return to salaried status in 2011 reflects her regular compensation. Were the policy to be read as defendants suggest, plaintiff's benefits would be based on a year – 2010 – that is not reflective of plaintiff's long-time career at the law firm. Plaintiff was paid $64,660 in 2010 which was not representative of her "average monthly compensation from [her] Employer" during "the prior tax year"[20] simply because she did not work the full year. A reasonable expectation would be that plaintiff would be paid based on her regular compensation, not based on a year that was vastly different than other years.

Even so, because we find the term "Active Work" is subject to reasonable alternative interpretations, and we construe ambiguities in favor of plaintiff, we find that reading the policy in "an ordinary and popular sense" leads us to the conclusion that plaintiff ceased "Active Work" when her leave began in January. Therefore, her prior tax year upon which her disability benefits

---

[18] *Ruttenberg,* 413 F.3d at 668, n.19.
[19] STND 00680.
[20] STND 00795.

should be based is 2011, not 2010.

      IT IS SO ORDERED.

Entered: <u>March 13, 2015</u>                                         <u>/s/ Susan E. Cox</u>
                                                                                  Susan E. Cox
                                                                                  United States Magistrate Judge